United States District Court
Southern District of Texas
FILED

JUN 2 9 2001

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BENZI CRAIG | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B 01-061 |
| | § | |
| ARTHUR WOOD & SON and MARMAXX | § | |
| OPERATING CORP.d/b/a MARSHALLS | § | |

## DEFENDANT ARTHUR WOOD & SON'S MOTION TO DISMISS FOR LACK OF JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b) AND BRIEF IN SUPPORT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW ARTHUR WOOD & SON, Defendant in the above entitled and numbered cause, and files this, its Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b) and Brief in Support, requesting the dismissal of Plaintiff's petition on the ground that this Court does not have personal jurisdiction over ARTHUR WOOD & SON, and in support thereof would show the Court as follows:

FACTUAL BACKGROUND

1.      This case has arisen over the alleged malfunction of a teapot. Plaintiff claims that on or about October 18, 2000 the base of said teapot burst, releasing scalding water onto her midriff. Plaintiff asserts claims of products liability, negligence, and breach of the implied warranty of merchantability against Arthur Wood & Son PLC.

2.      Arthur Wood & Son PLC is an English corporation with its principal place of business in London, England.

3.      Arthur Wood & Son PLC does not do business in the state of Texas, nor does it maintain and office, agency, or representative here. Arthur Wood & Son PLC has not authorized any

1

person or appointed any agent to accept service of process in Texas. Arthur Wood & Son PLC is not now, nor has it ever been, engaged in Business in Texas. Arthur Wood & Son PLC is not now, nor has it ever been, qualified, licensed, or authorized to do business in Texas. Arthur Wood & Son PLC does not now have nor has it ever had Texas banking accounts, real estate in Texas, or assets in Texas.

4.  Arthur Wood & Son PLC has never sold any teapots anywhere in the United States, including Texas. At all times relevant to this action, held the exclusive rights to import, distribute, and advertise Arthur Wood & Son teapots within the United States. After selling Arthur Wood & Son teapots in England, other entities, and not Arthur Wood & Son, are exclusively responsible for distribution, service, and sales support of Arthur Wood & Son teapots in the United States, including Texas. Arthur Wood & Son PLC does not exercise any day-to-day control over Marmaxx Corp., in its sales of Arthur Wood & Son teapots in the United States, nor does it exercise any control over any Texas Marshall's retail dealers. Arthur Wood & Son PLC did not sell the teapot at issue in this lawsuit, or any of its component parts, to the Plaintiff in this action. Further, Arthur Wood & Son PLC did not maintain or repair the subject teapot or make any warranties to Plaintiff concerning its operation.

5.  Arthur Wood & Son PLC has never designed a product specifically for Texas, nor advertised in Texas, nor established channels for providing regular advice to customers in Texas. Moreover, Arthur Wood & Son PLC did not market the subject teapot through a distributor who has agreed to serve as its sales agent in Texas. Moreover, Arthur Wood & Son PLC was not aware, nor could they foresee, that any of their teapots would make their way into Texas.

6.      The Court does not have personal jurisdiction over Arthur Wood & Son PLC for the reason

that Arthur Wood & Son PLC does not have sufficient contacts with Texas. Moreover, the

assertion of jurisdiction over Arthur Wood & Son PLC in this case would not comply with

traditional notions of fair play and substantial justice.

7.      Arthur Wood & Son PLC respectfully requests this Court to dismiss it from this action

pursuant to Fed. R. Civ. P. 12 (b)(2, 4, & 5).

## ARGUMENT AND AUTHORITIES

I.      INTRODUCTION

A U.S. District Court, sitting in diversity, may exercise personal jurisdiction over a

nonresident defendant if two criteria are met. (1) the long-arm statute of the forum state confers

personal jurisdiction over that defendant, and (2) exercise of such jurisdiction by the forum state

conforms to the requirements of due process under the Constitution. *Ham v. La Cienega Music Co.*,

4 F.3d 413 (5th Cir. 1993).

The Texas Supreme Court has repeatedly interpreted the broad language of the Texas long-

arm statute to reach as far as the federal constitution requirements of due process allow. *Guardian

Royal Exch. v. English China*, 815 S.W.2d 223, 226 (Tex. 1991). Consequently, the requirements

of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with

federal due process.

The due process clause of the Fourteenth Amendment to the United States Constitution

requires (1) that a defendant have certain minimum contacts with the forum state, and (2) that the

maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In

applying the minimum contacts analysis, the Supreme Court has identified only two types of

3

personal jurisdiction: "specific jurisdiction" and "general jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

Texas courts consistently recognize the difference between specific and general jurisdiction in analyzing personal jurisdiction.  *See Guardian Royal*, 815 S.W.2d at 227-228; *Project Engineering USA Corp. v. Gator Hawk, Inc.*, 833 S.W.2d 716, 721-722 (Tex.App.-Houston [1st Dist.] 1992, no writ).

II    SPECIFIC JURISDICTION DOES NOT EXIST BECAUSE THE LITIGATION DOES NOT ARISE OUT OF OR RELATE TO ANY OF ARTHUR WOOD & SON'S ALLEGED CONTACTS WITH TEXAS.

For specific jurisdiction purposes, a defendant has "minimum contacts" if the defendant has purposefully directed its activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. *Burger King v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L.Ed.2d 528 (1985).

A.    PLAINTIFF CANNOT SHOW THAT ARTHUR WOOD & SON PURPOSEFULLY DIRECTED ITS ACTIVITIES AT TEXAS AS IS REQUIRED TO ESTABLISH SPECIFIC PERSONAL JURISDICTION.

A plaintiff must show that the defendant has purposefully directed its activities toward the forum jurisdiction to establish specific jurisdiction.  In order to satisfy this purposeful direction prong, a plaintiff must prove that the defendant committed some act, thereby purposefully availing itself of the privilege of conducting activities within the forum state and invoking the protection of its laws. *Hansen v. Denckla*, 357 U.S. 235, 258, 78 S. Ct. 1228, 1240, 2 L.Ed 2d 1283, (1968).  This purposeful availment element "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the Unilateral activity of another party

4

or a third person." *Burger King*, 471 U.S. at 475. Additionally, the purposeful availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

While Arthur Wood & Son PLC admits that one of its teapots ended up in Texas, the mere presence of a product in a forum state does not, without more establish personal jurisdiction. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 107 S. Ct. 1026, 94 L.Ed.2d 92 (1985). As Justice O'Connor clarified in Asahi the "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state...[moreover] a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.*, 480 US at 112. Justice O'Connor set forth additional conduct that "may" indicate an intent or purpose to serve the forum (here, Texas): (1) designing the product for market in Texas, (2) advertising in Texas, (3) establishing channels for providing regular advice to customers in Texas, (4) marketing the product through a distributor who has agreed to serve as the sales agent in Texas, (5) showing an intent or purpose to serve the market in Texas. *Id.*, 480 US at 112. None of that additional conduct is present here.

In the instant case, Arthur Wood & Son PLC does not conduct any of its activities in the State of Texas. . Rather, at all times relevant to this action, other entities held the exclusive right to import, distribute, and advertise Arthur Wood & Son teapots within the United States. Arthur Wood & Son PLC does not exercise any day-today control over Marmaxx in its sales of Arthur Wood & Son teapots, nor does Arthur Wood & Son PLC exercise any control over any Texas Marshalls.

5

The evidence clearly demonstrates that Arthur Wood & Son PLC did not purposefully direct its activities toward Texas as required by *Burger King*, and, on this basis alone, Arthur Wood & Son's motion should be granted.

B.  PLAINTIFF CANNOT SHOW THAT THE CLAIM AROSE FROM DEFENDANT'S FORUM-RELATED ACTIVITIES AS IS REQUIRED TO ESTABLISH SPECIFIC JURISDICTION.

Even if it could be shown that defendant's conduct was directed to the residents of the forum, Plaintiff would also show that the claims arose from the defendant's contacts with the forum. Arthur Wood & Son's complete lack of contact with Texas makes it impossible for Plaintiff to establish that his alleged injuries arose from Arthur Wood & Son's activities within the state. Arthur Wood & Son PLC did not sell the subject teapot to Plaintiff. Arthur Wood & Son PLC did not maintain or repair the subject teapot, nor did Arthur Wood & Son PlC make any warranties to Plaintiff concerning its operation. After manufacturing the subject teapot in England, Arthur Wood & Son PLC had no further connection with the subject teapot. As such, there is no nexus between any Texas activity by Arthur Wood & Son PLC and Plaintiff's alleged injuries. Absent such a nexus, Plaintiff cannot prove the second prong of the test for specific jurisdiction.

III  GENERAL JURISDICTION DOES NOT EXIST OVER ARTHUR WOOD & SON

Having failed to establish specific jurisdiction over Arthur Wood & Son PLC, Plaintiff must establish that this Court has general jurisdiction over Arthur Wood & Son PLC or suffer dismissal of his claim. A showing of general jurisdiction requires a plaintiff to demonstrate that the defendant's contacts with the forum are so continuous and systematic as to justify maintaining a suit in the forum unrelated to the defendant's activities within that forum. *Helicopteros*, 466 U.S. at 416 (1984).

6

In the present matter, Arthur Wood & Son PLC lacks any contact with Texas, let alone the type of extensive, wide-ranging, continuous, and systematic contact justifying general personal jurisdiction. *Id.* Arthur Wood & Son PLC does not manufacture or sell any product in Texas. Arthur Wood & Son PLC has no Texas employees. It has never had Texas banking accounts. It has never paid Texas taxes. It is not qualified, licensed, or registered in Texas to do business. It has never owned any Texas real estate, nor does it otherwise have property or assets in Texas, nor does it maintain offices, plants, or facilities in Texas. Arthur Wood & Son PLC does not advertise in Texas, nor does it have a Texas agent for service of process. Arthur Wood & Son PLC essentially lacks any contacts with Texas. The Texas Supreme Court has held, that when facts such as these are present, general jurisdiction simply does not exist. *CSR, Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996). Clearly, there is no basis upon which the Court can reasonably and in fairness conclude that general jurisdiction over Arthur Wood & Son PLC exists.

IV  <u>FAIR PLAY AND SUBSTANTIAL JUSTICE REQUIRE THE DISMISSAL OF THE ACTION AGAINST ARTHUR WOOD & SON PLC.</u>

In addition to the foregoing discussion of "minimum contacts", Plaintiff must show that haling Arthur Wood & Son PLC into court in Texas, would not "offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316.

Inherent in the doctrine of minimum contacts is a concept of "Fair play and substantial justice." *Burger King*, 471 U.S. at 477-478. Even if Plaintiff could somehow prove that Arthur Wood & Son PLC has the requisite minimum contacts under the facts of this case, the Court should nevertheless decline to exercise jurisdiction because to do otherwise would be unjust. In *Burger King*, the Court stated that "fair play and substantial justice may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Id.*

7

CVisPDF - www.texlia.com

Courts have routinely concluded that the burden of defending an action within a particular forum is the primary concern in determining whether an exercise of jurisdiction is reasonable. *World-Wide Volkswagen Corp.*, 444 U.S. at 292. If the burdens of trial are to great for a plaintiff, the plaintiff can decide not to sue, or perhaps, to sue elsewhere. A defendant has no such luxury. "A Court must consider the burden on the defendant." *Asahi*, 480 U.S. at 113.

In *Asahi*, the United States Supreme Court stated that "[t]he unique burdens place upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114. As such, defending the present action in Texas would preset an unreasonable burden that cannot be justified by the facts of this case, especially given the fact that an alternate forum exists in England, where Arthur Wood & Son PLC is located. Accordingly, this Court should decline to exercise personal jurisdiction over Arthur Wood & Son.

Arthur Wood & Son PLC is an English corporation with no connection to Texas or the instant litigation. As permitted under Texas law, Arthur Wood & Son PLC may structure its corporate dealings to avoid exposure to the burden and expense of a Texas lawsuit. *Burger King*, 471 U.S. at 471-472. The due process clause "given a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where the conduct will and will not render them liable to suit." *Id.*

III.    <u>PLAINTIFF'S ATTEMPT AT SERVICE FAILED TO SATISFY THE REQUIREMENTS OF THE HAGUE CONVENTION ON SERVICE AND THEREFORE PLAINTIFF'S CLAIMS SHOULD BE DISMISSED UNDER FED. R. CIV. P. 12(b)(4 & 5).</u>

8

A.   THE HAGUE CONVENTION APPLIES TO THIS CASE AND ITS REQUIREMENTS WERE NOT MET

Service abroad must be made under a treaty if there is such a treaty and if the treaty requires service to be made according to its terms. Fed. R. Civ. P. 4(f)(1); *1993 Advisory Committee Notes to FRCP 4* at §41. Article 1 of the Hague Convention states that the Convention will apply when "there is occasion to transmit a judicial or extrajudicial document for service abroad." *Hague Convention on Service,* Nov. 15, 1965, art. 1, 20 U.S.T. 362, T.I.A.S. 6638. The language in Article 1 is mandatory and the Convention "preempts inconsistent methods of service prescribed by state law in all cases to which it applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 699, 108 S.Ct. 2104 (1988). "If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies." *Id.* at 700. Both Fed. R. Civ. P. (4)(f)(2)(C)(ii) and Tex. R. Civ. P. 108(a) require that documents be transmitted abroad in order to effect service on Arthur Wood & Son PLC. Therefore, the Hague Convention applies to this case and its requirements must be met.

The Convention requires that each signatory state establish a central authority to receive requests for service of documents from other countries. *Hague* at art. 2. The central authority will then serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requestor. *Hague* at art. 5. A signatory state may also consent to methods of service within its boundaries other than a request to the central authority. *Hague* at art. 8-11.

It is undisputed that in this case, there was no attempt at service under the general rule of the Hague Convention on Service, articles 2 and 5. Plaintiff admits in his Original Petition that the Hague Convention applies, but purports to satisfy the Convention's requirements via one of the alternate service provisions, specifically article 10(a). Article 10(a) provides in relevant part:

9

"Article 10 - Provided the State of Destination does not object, the present Convention shall not interfere with -

> (a) the freedom to send judicial documents, by postal channels, directly to persons abroad...."

Plaintiff contends that service under Tex. Civ. Prac. & Rem. Code § 17.044(b) satisfies article 10(a) of the Hague Convention. This contention must fail for three reasons: (1) Article 10(a) does not permit service of process by mail directly to the defendant without resorting to the central authority, (2) The Hague Convention prohibits *notification au parquet*, and (3) even assuming that Tex. Civ. Prac. & Rem. Code § 17.044(b) meets the requirements of the Hague Convention, it is not proper for this defendant because Arthur Wood & Son does not engage in business in Texas.

B.   ARTICLE 10(a) DOES NOT PERMIT SERVICE OF PROCESS BY MAIL DIRECTLY TO THE DEFENDANT

In a case very similar to ours, the Fifth Circuit has held that insisting on service pursuant to the Hague Convention was warranted. *Sheets v. Yamaha Motors Corp.*, 891 F.2d 533 (C.A.5 (La.) 1990). In that case, plaintiff attempted service on Yamaha Motors in Japan pursuant to the Louisiana long-arm statute. The Fifth Circuit held that "this transmittal of documents abroad was precisely the type of service that triggers the application of Hague Convention Procedures." *Id.* at 537. Thus, insisting on service pursuant to the Convention's procedures was warranted.

Additionally, other Circuits have held that Article 10(a) does not permit the type of service attempted here. *Bankston v. Toyota Motor Corp.*, 889 F.2d 172 (8th Cir. 1989). In that case, service was attempted on a defendant in Japan pursuant to Article 10(a) of the Convention. The Eighth Circuit reasoned that the word "send" in Article 10(a) is not the equivalent of "service of process." They said that the word "service" is used specifically in subsections (b) and (c) of Article 10 and if

10

the drafters of the Convention had meant for subparagraph (a) had meant to provide an additional means of service they would have used the word "service." *Id.* at 174. When construing a treaty, courts should begin with the text. *Kreimerman v. Casa Veerkamp, S.A. de C.V.*, 22 F.3d 634 (C.A.5 (Tex.) 1994). Additionally, where a legislative body "includes a particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that [the legislative body] acts intentionally and purposefully in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983).

Interestingly, in *Bankston*, Japan had specifically objected to much more formal modes of service under Article 10(b) and 10(c) but had not mentioned Article 10(a). The same is true of England in our case. See, *Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Full Status Report* (last modified June 6, 2001) <http://www.hcch.net/e/status/stat14e.html>. The Eighth Circuit said that it was "extremely unlikely" that Japan intended to authorize the use of registered mail as an effective mode of service in light of this fact. *Bankston*, 889 F.2d at 174.

Finally, it has been held that the notice which the Texas long-arm statute requires to be mailed to a nonresident's principal place of business is an integral part of the "service" authorized by the statute. Thus, since transmittal of judicial documents abroad was required, the Hague Convention was applicable. Therefore, the statute's requirement that a copy of process be mailed to nonresident's principal place of business was preempted by the Convention's requirements that process and request for service be forwarded to the central authority in defendant's home country. *Sang Young Kim v. Frank Mohn A/S*, 909 F.Supp. 474 (S.D.Tex.1995).

C.     THE HAGUE CONVENTION PROHIBITS NOTIFICATION AU PARQUET

CVISPDF - www.favisa.com

*Notification au parquet* permits service of process on a foreign defendant by the deposit of documents with a designated local official, then having the local official transmit the documents abroad to the defendant. In *Schlunk*, the Supreme Court stated that "there is no question but that the [Hague] Conference wanted to eliminate *notification au parquet*." *Schlunk*, 486 U.S. at 703. In coming to this conclusion the Court relies on the legislative history of the Convention. They determine, based on the debates, that it was the understanding of the drafting Commission that the Convention would regulate *notification au parquet*. The Texas long-arm statute relied on by Plaintiff in this case is classic *notification au parquet* and therefore constitutes invalid service under the Hague Convention.

D.   ARTHUR WOOD & SON PLC IS NOT AMENABLE TO SERVICE UNDER TEX. CIV. PRAC. & REM. CODE §17.044(b) BECAUSE THEY DO NOT ENGAGE IN BUSINESS IN TEXAS

Assuming for the sake of argument only, that Tex. Civ. Prac. & Rem. Code §17.044(b) is a valid alternate means of service under the Hague Convention, Arthur Wood & Son PLC still could not be served under it. §17.044(b) says:

> The secretary of state is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party.

It has been held that the scope of Vernon's Ann.Civ.St. art. 2031b (repealed; now, Tex. Civ. Prac. & Rem. Code §17.044) permitting valid service on a nonresident through Secretary of State was as broad as the constitutional standard of "minimum contacts" would allow. *Aetna Cas. & Sur. Co. v. Dobbs*, 416 S.W.2d 869 (Tex.App.-Eastland 1967). Therefore the analysis of whether Arthur

12

Wood & Son PLC is "engaged in business" in Texas for purposes of Tex. Civ. Prac. & Rem. Code §17.044 is the same as the "minimum contacts" analysis for Constitutional due process outlined above.

It has already been shown that Arthur Wood & Son PLC has no contacts with Texas. Arthur Wood & Son PLC does not manufacture or sell any product in Texas. Arthur Wood & Son PLC has no Texas employees. It has never had Texas banking accounts. It has never paid Texas taxes. It is not qualified, licensed, or registered in Texas to do business. It has never owned any Texas real estate, nor does it otherwise have property or assets in Texas, nor does it maintain offices, plants, or facilities in Texas. Arthur Wood & Son PLC does not advertise in Texas, nor does it have a Texas agent for service of process.

IV.    CONCLUSION

Arthur Wood & Son PLC is an English corporation based in London, England. Arthur Wood & Son PLC has never had any contacts with the State of Texas. As such, this Court lacks general personal jurisdiction over Arthur Wood & So PLC. Additionally, the Court lacks specific personal jurisdiction over Arthur Wood & Son PLC as it has not purposefully directed its activities toward Texas residents, nor is there any nexus between Plaintiff's claimed injuries and any activities of Arthur Wood & Son PLC within this state. Finally, it would be manifestly unreasonable to subject Arthur Wood & Son PLC to the jurisdiction of this forum - to do so would constitute an unreasonable burden on Arthur Wood & Son PLC and invade the sovereignty of a foreign nation.

Arthur Wood & Son PLC was not served properly under the Hague Convention on Service. The Hague Convention applies in this case because judicial documents were required to be sent abroad for service. Plaintiff has contended that service under Tex. Civ. Prac. & Rem. Code §17.044(b) satisfies article 10(a) of the Hague Convention. This contention must fail for three

reasons: (1) Article 10(a) does not permit service of process by mail directly to the defendant without resorting to the central authority, (2) The Hague Convention prohibits *notification au parquet*, and (3) even assuming that Tex. Civ. Prac. & Rem. Code §17.044(b) meets the requirements of the Hague Convention, it is not proper for this defendant because Arthur Wood & Son does not engage in business in Texas.

For these reasons, Arthur Wood & Son respectfully requests this Court to decline to exercise jurisdiction over Arthur Wood & Son and grant this motion to dismiss.

Signed on the _29_ day of _June_____, 2001.

Respectfully submitted,

WILLETTE & GUERRA, L.L.P.
International Plaza, Suite 460
3505 Boca Chica Boulevard
Brownsville, Texas 78521
Telephone:     (956) 541-1846
Facsimile:     (956) 541-1893

By: _____
      Mark Sossi
      State Bar No. 18855680
      USDC No. 10231

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document, has been sent to the following via U.S. Mail, return receipt requested, on the _27_ day of _June_____, 2001.

**VIA CM RRR 7000 0520 0022 1414 8781**
Edward E. Robinson
THE FLEURIET SCHELL LAW FIRM
621 E. Tyler
Harlingen, Texas 78550

_____
Mark Sossi

CibPDF - www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BENZI CRAIG | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B 01-061 |
| | § | |
| ARTHUR WOOD & SON and MARMAXX | § | |
| OPERATING CORP.d/b/a MARSHALLS | § | |

**ORDER SETTING HEARING ON ARTHUR WOOD & SON'S MOTION
TO DISMISS FOR LACK OF JURISDICTION PURSUANT TO
FED. R. CIV. P. 12(b) AND BRIEF IN SUPPORT**

On this _____ day of _____, 2001, came on to be considered **ARTHUR WOOD &
SON'S MOTION TO DISMISS FOR LACK OF JURISDICTION PURSUANT TO FED. R.
CIV. P. 12(b) AND BRIEF IN SUPPORT** in the above-styled and numbered cause.

IT IS THEREFORE ORDERED that said motion is hereby set for hearing on the _____ day
of _____, 2001, at _____ o'clock __.m.

SIGNED FOR ENTRY this _____ day of _____, 2001.

_____
UNITED STATES DISTRICT JUDGE PRESIDING

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| BENZI CRAIG | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B 01-061 |
| | § | |
| ARTHUR WOOD & SON and MARMAXX | § | |
| OPERATING CORP.d/b/a MARSHALLS | § | |

## ORDER GRANTING ARTHUR WOOD & SON'S MOTION
## TO DISMISS FOR LACK OF JURISDICTION PURSUANT TO
## FED. R. CIV. P. 12(b) AND BRIEF IN SUPPORT

On the _____ day of _____, 2001, came on to be considered **ARTHUR WOOD & SON'S MOTION TO DISMISS FOR LACK OF JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b) AND BRIEF IN SUPPORT**. The Court, after reading said motion, is of the opinion that such should be GRANTED.

IT IS THEREFORE ORDERED, that **ARTHUR WOOD & SON'S MOTION TO DISMISS FOR LACK OF JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b) AND BRIEF IN SUPPORT** is GRANTED.

SIGNED on this the _____ day of _____, 2001.

_____

UNITED STATES DISTRICT JUDGE PRESIDING